Bell, J.,
 

 dissenting. In this case I find myself forced to dissent from the conclusion reached by the majority and, because of the importance of the questions presented, I feel bound to state as briefly as possible the reasons for my conclusions.
 

 
 *171
 
 The petition makes known to the court “that on August 19,1944, Elmer P. Tinnerman, then a county commissioner of Montgomery county, Ohio, died; that he was not a candidate for re-election at that time, having more than two years of the term for which he was elected to serve.”
 

 On September 15, 1944, the Board of Elections of Montgomery county submitted to the Secretary of State the question whether there should be provided by such board a ballot containing space for a write-in candidate for the unexpired term of Tinnerman at the general election to be held on November 7, 1944, “by reason of the. fact that the board of elections had had a tie vote on this question.” On September 18, 1944, the Secretary of State voted in the affirmative, to wit, that the board should provide a ballot containing space for a write-in candidate for the unexpired term of Tinnerman as county commissioner. This the board has failed to do. We are told that the failure is based upon two grounds: (1) That the Court of Common Pleas of Montgomery county granted a permanent injunction enjoining the board from furnishing such a ballot; and (2) that Amended Senate Bill No. 284, passed by the General Assembly on April 27,1944, and approved by the Governor on the next day, creates a barrier to such procedure.
 

 Before proceeding to a discussion of those claims attention will be directed to the question as to whether the vacancy in the office of County Commissioner of Montgomery county, Ohio, should be filled at the election on November 7, 1944.
 

 Section 2397, General Code, provides in part:
 

 “If a vacancy in the office of commissioner occurs more than thirty days before the next election for state and county officers, a successor
 
 shall
 
 be elected thereat.” (Italics mine.)
 

 It is thus made clear that the vacancy should be filled by the election of a successor to the deceased
 
 *172
 
 commissioner at the election to be held on November 7, 1944, unless by the provisions of Amended Senate Bill No. 284, the provisions of Section 2397, General Code, are suspended for the 1944 eléction.
 

 Section 4785-13, General Code, provides in part as follows:
 

 “In
 
 all
 
 cases of a tie vote or a disagreement in the board, if no decision can be arrived at, the clerk shall submit the matter in controversy to the Secrétary of State, who shall summarily decide the question and
 
 his decision shall be final.”
 
 (Italics mine.)
 

 With these provisions in mind let us proceed to a consideration of the reasons assigned by. the board for failure. to comply with the decision of the secretary.
 

 (1) That the Court of Common Pleas granted a permanent injunction enjoining the board from furnishing such a ballot.
 

 This court just fifty years ago disposed of a similar situation in the case of
 
 Chapman
 
 v.
 
 Miller,
 
 52 Ohio St., 166, 39 N. E., 24. The syllabus reads:
 

 “Upon submission of objections to certificates of nomination, by board of deputy state supervisors to state supervisor of elections, his decision thereon is final, and the board of deputy state supervisors refusing to comply therewith may be compelled to do so by mandamus. And an answer stating that they have been enjoined by the Court of Common Pleas or a judge thereof, states no .valid excuse for refusing to comply with the decision of the state supervisor. In such case the Court of Common Pleas has no jurisdiction of the subject matter and its order of injunction is void.”
 

 The court in that ease was construing Section 10 of the ballot law which read in part as follows: “ * * * but in case no decision can be arrived at, the matter in controversy shall be submitted to the state supervisor of elections [Secretary of State], who shall summarily decide the question thus submitted to him, and his decision shall be final. ’ ’
 

 
 *173
 
 There, as here, the Court of Common Pleas had issued an injunction against the hoard doing the very act which the mandamus action sought to compel it to do and this court said: 4 4 The statute provides that the question shall be summarily decided, and that the decision shall be final.” This necessarily excludes the jurisdiction of the Court of Common Pleas, as to the subject matter, and it is clear that the judge of the Court of Common Pleas was without jurisdiction, and that his order granting the injunction was utterly void and of no effect, and furnishes no excuse for the refusal to obey the order of the state supervisor of elections.”
 

 The court also said: 44But when those questions are decided by the state supervisor [Secretary of State], and the duties of the county board fixed, it becomes the duty of such board to obey the order of the state supervisor, and if the members of the county board refuse to execute the order of the state supervisor, they can be compelled to do so by mandamus.” That case has never been overruled and it is still the law of this state. I am fully persuaded that it answers as follows, two questions here presented:
 

 First.
 
 That the Court of Common Pleas of Montgomery county was wholly without jurisdiction to issue the injunction and that the order was void.
 

 Second.
 
 That when the Secretary of State decided that the ballot should be prepared and submitted to the ■electors of Montgomery county so as to enable them to elect a successor to the deceased commissioner, that it became the clear legal duty of the board to obey such order and obedience should be compelled by mandamus. Unless this be true the Secretary of State is powerless to compel obedience to his orders in matters committed by law to him for final determination.
 

 (2) Coming now to a consideration of Amended Senate Bill No. 284, it is claimed that to fill the va
 
 *174
 
 caney as provided for by Section 2397, General Code, would in some way conflict with some provision of Amended Senate Bill No. 284. In the limited time available, I have examined the provisions of that act and am at a loss to find any provision therein which could possibly be a barrier to compliance with the plain and explicit provisions of Section 2397, General Code.
 

 Let us briefly analyze the act.
 

 The purpose is stated in the title, ‘ ‘ To facilitate voting at' the elections to be held on the seventh day of November, 1944, by persons absent from their voting residences and serving in or with the armed forces of the United States * * * and to suspend Sections 4785-86, 4785-92, 4785-93, 4785-94, 4785-95, 4785-96, 4785-98, 4785-105, 4785-110, 6064-32 and 6212-62 of the General Code during the period of time in which this act is in force and effect, and to repeal Section 4785-141 of the General Code, and to declare an emergency. ’ ’ The act contains thirteen sections. The first ten make provision for the voting of absent war voter ballots by persons serving in the armed forces of the United States or of its allies or other specified organizations connected with the war effort, who possess the specified qualifications. The act provides in detail how the application to secure such ballots shall be made and provides certain duties to be performed by the Secretary of State and boards of elections in connection with the specified purposes of the act.
 

 Section 11 provides that the act shall cease to be in effect on and after November 8, 1944, and specifies by numbers the several sections of the General Code mentioned in the- title which are suspended until the eighth day of November, 1944.
 

 ' Section 12 of the act provides for the repeal of Section 4785-141, General Code, which was a prior soldiers’ and sailors’ vote act.
 

 Section 13 declares that the act is an emergency measure and the stated reason of the emergency is:
 
 *175
 
 “Because of such absence they [persons in the armed forces] might, under present absent voter laws, be unable to vote at the November election in 1944. This act will make it easier for them to vote at such election.”
 

 That the General Assembly exercised great care in the w-orking out of the provisions of the act is demonstrated by even a casual reading thereof. The language used and the details provided make it apparent that it was enacted for the sole purpose of making it easier for members of the armed forces, residents of Ohio, to vote at such election. To me it is passing strange that if it was intended to suspend the provisions of Section 2397, General Code, the General Assembly failed to say so.
 

 If it be urged that here a contingency has arisen for which no provision has been made in the emergency act (Amended Senate Bill No. 284) and therefore some of the citizens of Montgomery county, Ohio, serving in the armed forces, may not be given the opportunity to cast a write-in ballot for a successor to the deceased commissioner, a sufficient answer is that such a situation can constitute no valid reason for depriving the. thousands of citizens of that county, who are so entitled to vote, of their right .to fill the vacancy by election of some person at the election on November 7, 1944.
 

 Where a vacancy has occurred in an elective county office more than thirty days prior to an election held to elect state and county officers and no person is eligible to have his name printed on the ballot as a candidate to fill such vacancy, it is, the duty of the Secretary of State and of the board of elections to provide a method, either upon the regular or by a special ballot, to enable the electors to fill such vacancy and, in my opinion, ample authority for so doing is found in Section 4785-7, General Code.
 

 Section 4785-131, General Code, reads in part as follows:
 

 
 *176
 
 “6. If the elector desires to vote for a.person whose name does not appear on the ticket, he can substitute the name by writing it in black lead pencil in the proper place, and making a cross mark in the blank space at the left of the name so written.”
 

 If no such blank space is provided upon the regular ballot, I can see no valid reason why a special ballot may not be prepared and voted.
 

 The majority opinion is based upon the philosophy that the right of franchise is in some way dependent upon legislative will. In other words, unless some statute can be found which authorizes the doing of each specific act, there can be no election. In my thinking the right of franchise is not dependent upon legislative will. It is bottomed upon
 
 constitutional mandate.
 

 The absent voters act (Amended Senate Bill No. 284) does not contain one word which to me discloses any intention upon the part of the General Assembly to disturb the general election machinery of the state. As has already been pointed out, the General Assembly, by the
 
 mandatory
 
 provision of Section 2397, General Code, has said that this vacancy
 
 shall
 
 be filled at the election on November 7, 1944. Assuming that no specific provision has been enacted as to how that
 
 mandate
 
 shall be executed, the Secretary of State under the broad powers granted to him hacl full authority to provide the method for the execution of the legislative will. Here we have both constitutional and legislative mandates that this office
 
 shall
 
 be filled at the election on November 7, 1944, and the Secretary of State as the chief election officer had at least implied authority to order whatever steps were necessary to be taken in order that the electors of Montgomery county should be able to exercise their right of franchise.
 

 
 *177
 
 I agree with the conclusion of the Attorney General and insist that the Secretary of State’s order was lawful and it was the clear legal duty of the board of elections to obey such order.
 

 To deny this writ will deprive one hundred thousand electors of Montgomery county of -their right of selecting, in the manner provided for by the Constitution and statutes, a successor to fill the vacancy caused by the death of Tinner'man and will set at naught the decision of the Secretary of State, which the statute declares shall be final upon the question in controversy.
 

 The motions to dismiss should be overruled and the writ granted.
 

 Hart and Williams, JJ., concur in the foregoing dissenting opinion.